O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN HOODYE,<br><br>　　　　　Plaintiff,<br>　　v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>　　　　　Defendant. | Case No. CV 12-2184-OP<br><br>MEMORANDUM OPINION AND ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 7, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 8 at 3.)

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered the opinion of Plaintiff's treating physician; and

(2) Whether the ALJ properly developed the record regarding Plaintiff's treating source opinions.

(JS at 3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

# III.

# DISCUSSION

**A.  The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of mood disorder, not otherwise specified; a history of ethyl alcohol abuse; asthma; and eczema. (Administrative Record ("AR") at 14.)  The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a "narrowed range of light exertion work," including the ability to lift and/or carry up to twenty pounds occasionally, up to ten pounds frequently; to stand and/or walk for six hours out of an eight-hour workday; to sit for six hours of an eight-hour workday; and to push and/or pull within the above weight limits.  (Id. at 15-16.)  The ALJ found Plaintiff limited to simple repetitive tasks, and to low-stress work involving no contact with the public, although he can frequently interact with supervisors and coworkers; that he cannot be exposed to extreme heat or extreme cold; and that he cannot tolerate exposure to concentrated dusts, fumes, or chemicals.  (Id. at 16.)

Relying on the testimony of the vocational expert ("VE"), the ALJ determined that Plaintiff was able to perform the requirements of such occupations as assembler (Dictionary of Occupational Titles ("DOT") 712.687-010); and packer (DOT 920.687-010).  (AR at 19.)

**B.  The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician and Properly Developed the Record.**

On April 13, 2011, Plaintiff's treating physician, Dr. King, completed a two page check-box form relating Plaintiff's ability to do work related activities because of mental limitations.  (Id. at 662-63.)  For three of the twenty-five categories, Dr. King indicated that Plaintiff was seriously limited but was not precluded from performing the ability (e.g., ability to remember procedures; ability to understand and remember short and simple instructions; and ability to be aware

of normal hazards and take appropriate precautions); for eighteen of the twenty-five tasks, Dr. King indicated that Plaintiff was unable to meet competitive standards (e.g., in his ability to: carry out short and simple instructions; maintain attention for two hours; maintain regular attendance and punctuality; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday/workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress; set realistic goals; interact appropriately with the general public; maintain socially appropriate behavior; travel in unfamiliar places; and use public transportation); and for six of the twenty-five categories, Dr. King indicated that Plaintiff had no useful ability to function (e.g., accepting instructions and responding appropriately to supervisors; getting along with coworkers without unduly distracting them or exhibiting behavioral extremes; understanding and remembering detailed instructions; carrying out detailed instructions; dealing with the stress of semi-skilled and skilled work; and adherence to basic standards of neatness and cleanliness. (Id.) Dr. King also noted that Plaintiff would miss more than four days of work per month. (Id.)

The ALJ discussed Plaintiff's mental impairments, including Dr. King's opinion, as follows:

> Turning to the claimant's alleged mental impairments, the record reveals that the claimant has complained of "anxiety and depression." The claimant is apparently in treatment for his mental impairments, but

his treating clinician, Dr. King, has declined to submit treatment notes.[3] The claimant's treating clinician has opined that the claimant is seriously-to-completely precluded from performing almost all usual mental requirements of work. However, nothing in the credible evidence of record supports such limitations. Indeed, numerous emergency department[s] make little or no mention of psychiatric symptoms, and certainly give no indication that the claimant experiences the very significant mental limitations assigned by the claimant's treating clinician.

. . . .

Given Dr. Singer's narrative report, and the lack of other medical evidence supporting Dr. King's assessment of significant work-related mental limitations, the undersigned gives little evidentiary weight to Dr. King's assessment. Giving the claimant every benefit of doubt, the undersigned finds that the claimant's mild mood disorder limits him to simple repetitive tasks and low stress work. The claimant's mood disorder precludes him from working with the general public, but does not preclude him from frequent interactions with co-workers and supervisors. In regard to the Part B criteria of section 12.00, the undersigned finds the claimant has no restriction of activities of daily living; moderate limitation in the ability to maintain social functioning; and mild limitation in concentration, persistence, and pace. The claimant has never experienced an episode of decompensation, of

---

[3] As discussed infra, the ALJ kept the record open for several months so that Plaintiff could submit additional records from Dr. King and from his treating cardiologist. (AR at 53.) Between May and August 2011, Plaintiff submitted additional records regarding his cardiac treatment, but he submitted nothing from Dr. King. (Id. at 664-1164.)

5

1   extended duration.
2   (Id. at 17-18 (citations omitted).)
3       Plaintiff contends that the ALJ failed to "describe with any specificity" the
4   April 13, 2011, "Medical Opinion Re: Ability To Do Work-Related Activities
5   (Mental)" form, completed by Dr. King. (JS at 5.) Plaintiff also contends that the
6   ALJ failed to state whether he accepted or rejected Dr. King's opinion, did not
7   explicitly state the weight given to the opinion, and did not provide specific and
8   legitimate reasons supported by substantial evidence for rejecting that opinion.
9   (Id. at 5-6.) Moreover, according to Plaintiff, since the ALJ stated that Dr. King
10  had declined to produce any treatment notes, the ALJ failed to properly develop
11  the record and should have subpoenaed those notes as they were vital to
12  determining whether the assessment was supported by those notes. (Id. at 7.)
13      It is well-established in the Ninth Circuit that a treating physician's opinions
14  are entitled to special weight, because a treating physician is employed to cure and
15  has a greater opportunity to know and observe the patient as an individual.
16  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating
17  physician's opinion is not, however, necessarily conclusive as to either a physical
18  condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747,
19  751 (9th Cir. 1989). The weight given a treating physician's opinion depends on
20  whether it is supported by sufficient medical data and is consistent with other
21  evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating
22  physician's opinion is uncontroverted by another doctor, it may be rejected only
23  for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
24  1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating
25  physician's opinion is controverted, it may be rejected only if the ALJ makes
26  findings setting forth specific and legitimate reasons that are based on the
27  substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.
28

2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

    **1.**    **Dr. King's Opinion Was Inconsistent with the Record as a Whole and Supported by Substantial Evidence.**

In his decision, the ALJ set forth a detailed summary of Plaintiff's mental health evidence, including the consultative examination report conducted by psychiatrist Jobst Singer, M.D., who performed an examination in September 2008. (AR at 17.) Dr. Singer diagnosed Plaintiff with a mood disorder, not otherwise specified, and opined that Plaintiff's mood disorder would likely improve with regularly scheduled activity, such as employment. (Id. (citation omitted).) Dr. Singer found Plaintiff "normally groomed," cooperative, with stable affect and clear thought processes, oriented, memory and concentration

intact, and with fair judgment. (Id. (citation omitted).) In his report, Dr. Singer noted Plaintiff's reports of visual and auditory hallucinations, frequent mood swings, and psychiatric hospitalization ten years prior. (Id. at 629-31.) Dr. Singer noted that Plaintiff appeared low in mood and concluded that he would be unimpaired in simple tasks, mildly impaired in complex tasks, and that there was "no psychiatric basis . . . that would prevent [Plaintiff] from completing a full day of work." (Id. at 631.)

The ALJ also noted that the many emergency room documents made "little or no mention of psychiatric signs or symptoms," and gave "no indication" that Plaintiff suffered from the extreme mental limitations suggested by Dr. King. (Id. at 17.) The ALJ also reviewed the October 2010 report of psychiatric consultant R.E. Brooks, M.D., who found that Plaintiff did not have a severe mental impairment, had no restrictions of activities of daily living, no difficulties in maintaining social functioning, and no difficulties in maintaining concentration, persistence, and pace. (Id.) Dr. Brooks also noted no episodes of decompensation of extended duration. (Id.)

The ALJ discussed Plaintiff's history of alcohol abuse but also found that there was "no indication that [Plaintiff's] alcohol abuse precludes him from working for an eight-hour day, or a five-day workweek. (Id. at 18.) The ALJ noted that Plaintiff had given "shifting stories" regarding his alcohol use problems, telling Dr. Singer he had no problems, testifying at the hearing that he drinks only a few times a week, but that the medical evidence "indicates significant alcohol use." (Id. (citations omitted).)

Although the ALJ gave little weight to Dr. King's assessment, based in part on the opinions of Dr. Singer and Dr. Brooks, as well as the emergency

department records, and Plaintiff's lack of credibility,[4] he also gave Plaintiff the benefit of the doubt when he limited him to simple repetitive tasks, low stress work, and precluded him from working with the general public. The Court finds the ALJ's discussion to be sufficiently clear that he was giving Dr. King's assessment little to no weight, and, therefore, was rejecting the extreme limitations posited by Dr. King. The Court further finds the ALJ's reasons for rejecting Dr. King's opinions to be specific and legitimate reasons, supported by substantial evidence. Thus, there was no error.

### 2.     Lack of Specificity.

Plaintiff contends the ALJ failed to describe Dr. King's assessment with "any specificity." (JS at 5.) The Court is unclear as to the meaning of this contention. If Plaintiff is contending that the ALJ did not go through each and every one of Dr. King's findings, the ALJ was not required to do so, as an ALJ is not required to address every piece of information in the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003 (expressing that an ALJ need not discuss "evidence that is neither significant nor probative. . ."). Thus, the Court finds no error.

### 3.     Develop the Record.

Plaintiff contends the ALJ failed to properly develop the record and should have subpoenaed Dr. King's treatment notes as these were vital to a determination of whether his assessment of Plaintiff was supported by those notes. (JS at 7.)

Under the Commissioner's regulations, both the disability benefits claimant and the Social Security Administration bear a regulatory responsibility for developing the evidentiary record. In fact, the claimant must produce medical evidence showing that the claimant has an impairment and how severe that

---

[4] Plaintiff does not dispute the ALJ's credibility determination.

impairment is during the time the claimant claims to be disabled. See 20 C.F.R. §§ 404.1512(c) (applicable to claims for disability benefits), 416.912(c) (applicable to claims for SSI benefits). Before deciding that a claimant is not disabled, the Administration must develop a claimant's complete medical history for at least the twelve months preceding the month in which the claimant files his application. The SSA must make every reasonable effort to help the claimant get medical reports from the claimant's medical sources when the claimant gives permission to request the reports. See 20 C.F.R. §§ 404.1512(d), 416.912(d).

      The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where the claimant is represented by counsel. See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen, 80 F.3d at 1288); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." See Tonapetyan, 242 F.3d at 1150 (citing Smolen, 80 F.3d at 1288). That duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect his or her own interests. Celaya, 332 F.3d at 1183; see also Tonapetyan, 242 F.3d at 1150; Crane, 76 F.3d at 255. However, it is the plaintiff's burden to prove disability. Bayliss v. Barnhart, 427, F.3d 1211, 1217 (9th Cir. 2005) (quoting Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving that she is disabled")).

      When the duty to develop the record is triggered, the ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve

the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for more supplementation. Tonapetyan, 242 F.3d at 1150; 20 C.F.R. § 416.917. As previously discussed, the evidence relied on by the ALJ was not so ambiguous as to trigger the ALJ's duty to supplement the record, but even if were, by agreeing to receive additional evidence from Plaintiff's counsel after the hearing, the ALJ satisfied any duty to develop the record. Id.

Here, the record reflects that Plaintiff was advised prior to the date of the administrative hearing that if there was more evidence he wanted the ALJ to see, he should submit it as soon as possible. (AR at 85.) Plaintiff also was advised to contact the Administration if he needed help securing medical evidence, including the issuance of a subpoena. (Id.) Consequently, the Court has no basis for finding or concluding that the Administration failed to fulfill its affirmative obligation under 20 C.F.R. §§ 404.1512(d) and 416.912(d) to assist Plaintiff in securing medical evidence from his treating sources prior to the hearing.

Moreover, as previously discussed, the ALJ properly relied on multiple reasons for rejecting Dr. King's opinions. Accordingly, the duty to develop the record was not triggered by any ambiguities or other issues. In fact, at the beginning of the hearing, Plaintiff's counsel stated there was no other written evidence for the ALJ's consideration. (Id. at 28.) The record also reflects that at the conclusion of the hearing, Plaintiff's counsel stated the following:

> The claimant has testified to receiving treatment from Dr. King, who executed an RFC, mental RFC on his behalf and he's testified that he's at least seen Dr. King, you know, three or four times since the filing of this claim[]. Could we have an additional two weeks to get these records . . . from Central Mental?

(Id. at 53.) The ALJ agreed to keep the record open for an additional fifteen days

so that Plaintiff could obtain records from Dr. King or the Mental Health Clinic as well as from Plaintiff's treating cardiologist. (Id.) The ALJ noted that if the evidence was not received within that time frame, without a showing of good cause to extend the time, the decision would issue without the additional evidence. (Id. at 53-54.)

Plaintiff admits he provided no additional records from Dr. King. (JS at 14.) He argues, however, that because he failed to provide additional records, the ALJ had a duty to attempt to obtain them himself. (Id.) The Court notes that at the hearing, Plaintiff's counsel had explicitly asked that the record be held open so that Plaintiff could provide the records and did not notify the ALJ either then or later that there was any problem obtaining the records, or that a subpoena was needed. In fact, the ALJ held the record open for almost three months after the hearing date and during that time, Plaintiff submitted voluminous records regarding his cardiac treatments. (AR at 664-1164.) The ALJ's actions were sufficient to satisfy his duty to develop the record with respect to Plaintiff's mental health condition. Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ satisfied his duty to develop the record by holding the record open so that the claimant could supplement the evidence); see also Petrosyan v. Massanari, 13 F. App'x 653, 644 (9th Cir. 2001 (same).

Moreover, after the decision was denied, Plaintiff was informed that he could appeal the decision and send a written statement about the case "and any new evidence" with his appeal. (AR at 9.) Plaintiff did not send any additional records from Dr. King to support his appeal.

Based on the foregoing, the Court finds that there was no error by the ALJ in developing the record.

/ / /

## IV.

## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: October 16, 2012

/s/ _____
HONORABLE OSWALD PARADA
United States Magistrate Judge